# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES SEDRICK, | ) |
| Plaintiff, | ) |
| | ) Case No. 07 C 5811 |
| v. | ) |
| | ) Judge Joan B. Gottschall |
| ALL PRO LOGISTICS, LLC, and RONALD L. LEEK, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION & ORDER

Via order entered on June 8, 2009 ("June 8 Order"), judgment on liability was entered in favor of Plaintiff James Sedrick, leaving the issue of damages to be resolved. Three motions are now before the court. First, Defendants have moved to alter or amend the June 8 Order. Second, Sedrick has moved for summary judgment on the issue of damages. Finally, Defendants have moved to strike some of the attachments and arguments included in Sedrick's reply brief in support of his damages claim.

### I. DEFENDANTS' MOTION TO ALTER OR AMEND JUNE 8 ORDER

First, Defendants seek to have the judgment altered or amended. The judgment was entered against both All Pro Logistics, LLC ("APL"), the company for whom Sedrick worked, and Ronald L. Leek, a partial owner of APL. The June 8 Order focused on the Fair Labor Standards Act ("FLSA") and the Motor Carrier Act ("MCA") exemption to the FLSA, and did not separately consider parallel state-law claims because for purposes of liability the legal and factual issues were the same. Leek now argues that judgment against him is improper because Sedrick has failed to allege and/or prove that Leek exercised supervisory authority over Sedrick, which is necessary for a finding of liability under the FLSA. *See Riordon v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987).

However, Leek did not present this legal argument in his motion or supporting memorandum for summary judgment, nor in response to Sedrick's cross motion for summary judgment. "A party seeking to defeat a motion for summary judgment is required to 'wheel out all its artillery to defeat it.' . . . Reconsideration is not an appropriate forum for . . . arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) (citations omitted). Defendants' motion to alter or amend is therefore denied.[1]

## II. DEFENDANTS' MOTION TO STRIKE

Defendants seek to strike certain affidavits and legal arguments regarding Leek's individual liability (and whether he exercised supervisory authority over Sedrick). The court did not consider these arguments in reaching its decision that Leek has waived this defense, and thus the motion to strike is denied as moot.

## III. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DAMAGES

The final motion is by Sedrick for summary judgment on the issue of damages. Three issues must be resolved. First, although pay stubs and other records of hours worked were maintained, the parties dispute whether they accurately reflect the hours worked by Sedrick. Thus the court must resolve how the overtime damages will be calculated. Second, the court must determine how many years of overtime violations will be covered. Finally, the court must determine whether to apply liquidated damages under the FLSA.

---

[1] Leek attempts to argue that his motion regards *damages* and not *liability*; Leek contends that since the first round of summary judgment motions was only as to liability, he is not tardy in presenting his argument now. This argument is not credible. Leek is arguing that he is not an employer, and therefore *is not liable*. There was a time for this argument, and it has passed.

**A.      Calculation of Overtime Damages**

This is an overtime wage case only; Sedrick received his actual pay rate for each hour worked, and thus his damages are to be calculated as half of his hourly rate times the total number of hours worked per week over forty hours. The parties do not dispute this formula, but they present competing arguments regarding how many hours Sedrick actually worked.

Sedrick has attached evidence of his hours worked, in the form of, *e.g.*, pay stubs showing the number of hours reported, and his hourly salary. Sedrick contends that these reports should not be taken at face value, however, because starting March 21, 2005, and continuing through the rest of the applicable period, Sedrick argues that defendants engaged in a scheme to misrepresent his actual hours worked. He argues that defendants reported only half his hours, but then paid him double his normal hourly rate. For example, if he worked 70 hours per week[2] and he was paid $16 per hour, but starting March 21, 2005, this would be reported as 35 hours of work at $32 per hour. Sedrick's base hourly pay was unaffected—he still received $16 for every actual hour worked—but for purposes of calculating overtime, the reported hours are no longer accurate.

To support his theory that this change occurred on March 21, 2005, Sedrick presents the following evidence. First, he shows the pay stubs themselves, which reflect that his salary doubled on March 21, 2005, and that his hours decreased. Of course, the pay stubs are silent as to the *reason* for this change in pay, and the pay stubs merely reflect the hours reported, but do not explicitly state "this is half as many hours as before." Sedrick also has included an affidavit in which he states that he was told by Leek and others that defendants were going to double his pay and cut his reported hours in half because of concerns about compliance with certain (unnamed) laws. However, this assertion may not be credited at this stage since Sedrick appears to have stated in his deposition that

---

[2] The precise number of hours Sedrick worked varied from week to week.

3

he never spoke to Leek about the change in pay. *See* Sedrick Apr. 3, 2008 Dep. Tr. 58.³ However, Sedrick also states without contradiction that he knew the company was doubling his rate of pay and halving his hours, even if he cannot state explicitly why this was done. *See id.* at 50:13–22. Sedrick also points out in his reply brief that he received eight hours per day of holiday pay prior to March 21, 2005, but only four hours after March 21, 2005. *Compare* Pay Stub for Period Ending 12/26/04 (reporting 8 hours of holiday pay at rate of $16 per hour) *with* Pay Stub for Period Ending 01/01/06 (reporting 4 hours of holiday pay at rate of $34 per hour)⁴ (attached as Ex. B to Sedrick's Statement of Facts). The court is convinced that this evidence speaks for itself; absent an explanation for why Sedrick's salary suddenly doubled and his hours dropped roughly in half, the only reasonable conclusion is that Sedrick was being paid double for half as many hours.

Defendants contend that the number of hours worked is a disputed fact, but point to nothing that puts these facts at issue. Defendants do not put forth any affidavits or testimony to provide a contrary explanation as to why Sedrick's salary doubled in March, 2005. Instead, they dispute the reported numbers proffered by Sedrick by citing one week of pay, March 20, 2006 to March 26, 2006, where Sedrick reportedly worked 67.5 hours according to his time cards. They argue that it is unfathomable that Sedrick actually worked 135 hours in one week, especially since Sedrick stated in his deposition that he worked only six days a week. On its face, this is a worthwhile observation. But as Sedrick points out in his reply, defendants disingenuously failed to observe that there is also

---

³ It is not clear from the excerpt of the transcript what is being discussed *See* Tr. at 58:9–10 ("so you never brought *it* to [Leek's] attention?") (emphasis added). Although defendants could have made this much clearer, at this stage it must be assumed that Sedrick understood he was being asked about the change in pay. Sedrick has not supplemented the record to dispute this inference, and inferences must be drawn in favor of the non-moving party.

⁴ Of course, double of $16 would be $32. From March 21, 2005 to October 31, 2005, Sedrick was paid $32. On October 31, 2005, his salary increased to $34.

4

no pay stub for the prior week.  A logical inference is that Sedrick was for some reason not paid during the previous week, and these hours were lumped together into his paycheck with the 3/20/2006–3/26/2006 period.  Considering that this is the *only* pay period cited by defendants as having an inexplicably high reported number of hours, the court cannot agree that this alone creates a material factual dispute.

Defendants' final effort to create a dispute centers on alleged discrepancies between "daily log sheets," allegedly filled out by Sedrick, and the corresponding hours reported on his time sheets. *Compare* Daily Shipment Logs (Ex. E to Defs.' Stmt. of Facts) *with* Pay Stubs (Ex. B to Pl.'s Stmt. of Facts).  Defendants note that for several weeks the hours reported in the shipment logs correspond to the hours reported on his pay stubs.  For example, in both documents it is reported that Sedrick worked 35 hours in the 4/18/05–4/24/05 time period.  However, defendants have put forth no evidence to establish the veracity of the numbers reported in the daily shipment logs, nor any evidence that these logs reflect the entirety of the work performed by Sedrick on the given date. Defendants state as fact that "Plaintiff filled out daily shipment logs that marked mileage, number of runs, and start and end times," Def. Stmt. of Fact 9, but the citation to establish this fact, page twenty, lines two to nine, of Sedrick's deposition, establishes only that to figure out "how often" Sedrick performed his drives, the lawyer asking the question would "have to look at the paperwork." *Sedrick* Apr. 3, 2008 Dep. Tr. at 20:2–7.  Even if the court were to assume that the paperwork being referenced is the daily shipment logs, the testimony is silent on how these logs were created, and is silent on whether these logs represent the entirety of Sedrick's work day.

There is no material dispute that starting March 21, 2005, defendants began to pay Sedrick twice his actual rate of pay for half as many hours as he actually worked.  Thus, to calculate his

5

unpaid overtime wages, the number of hours reported will be doubled. Any amount over forty hours per week will then be multiplied by one-forth of Sedrick's reported rate of pay.[5]

**B.     Liquidated Damages**

The next question is whether liquidated damages are warranted for the period covered by the FLSA.[6]  Liquidated damages can be equal to the amount of actual damages, and the assumption is that they should be awarded absent proof by defendants that "the act or omission giving rise to such action was in good faith" and that the defendants "had reasonable grounds for believing that [the] act or omission was not a violation of the Fair Labor Standards Act . . . ."  29 U.S.C. § 260; *Bankston v. State of Ill.*, 60 F.3d 1249, 1254 (7th Cir. 1995).  This is a question for the court, and it is a standard favorable to the plaintiff since the defendant bears the burden.  *Bankston*, 60 F.3d at 1253 & n.2.

Defendants have not put forth evidence that they acted in good faith, nor that they had a reasonable ground for believing their conduct was proper.  They cite an affidavit by Leek stating that he had "personal knowledge regarding the Department of Transportation guidelines that All Pro Logistics must comply with because its services are performed across state lines," Leek Aff. ¶ 16, but this falls short of stating that Leek or APL did anything to assure they complied with the FLSA. As the court emphasized in its  6/8/09 Order, APL did not operate strictly across state lines, and Leek's reliance on Department of Transportation guidelines is therefore of no moment.  More importantly, defendants have offered no explanation for why Sedrick's wages doubled and his stated

---

[5] One fourth is correct because (1) Sedrick's actual rate of pay is half of his reported rate of pay, and (2) Sedrick's overtime damages are half the rate of his actual rate of pay.  Thus, for example, if the reported salary rate is $32/hour, then his actual salary rate is $16/hour, and his overtime extra pay is $8/hour.

[6] The issue of how many years are covered by the FLSA is discussed in the next section.

6

hours approximately halved partway through his employment, resulting in almost no overtime hours from March 21, 2005 onward. Defendants must establish that they acted with good faith *and* that they had a reasonable ground for doing so. They have not done so. Liquidated damages will be awarded.

C.     **Period of Coverage of FLSA**

Finally the court must determine what period will be covered by the FLSA. The lawsuit was filed on October 15, 2007, and the default statute of limitations for a FLSA claim is two years. 29 U.S.C. § 255(a). However, a third year of liability can be added for "a cause of action arising out of a willful violation." *Id.*; *see also Howard v. City of Springfield*, 274 F.3d 1141, 1144 (7th Cir. 2001). "An employer acts willfully, for purposes of establishing the proper statute of limitations, where he knows or shows reckless disregard for whether his actions are unlawful under the FLSA." *Bankston*, 60 F.3d at 1253. This is a higher standard than that of liquidated damages, however, and Sedrick bears the burden of establishing willfulness.

The court cannot determine at this stage that the defendants' conduct was definitively willful. *See id.* (noting that issue is often left to the province of the fact finder). To say that the defendants' bookkeeping methods were dishonest is an understatement, but what they did does not establish conclusively that defendants were acting with a willful intent to violate the FLSA. Sedrick states in an affidavit that he was told by Leek that this change was made because his hours otherwise "may not have been in compliance with certain laws," Sedrick Aff. ¶ 3 (Doc. No. 65-13), but as noted above his deposition could be understood as stating the opposite: that he never spoke to Leek about the change in his pay and hours. Sedrick also attached an affidavit from Truda Rogers to his reply brief which states that the bookkeeping changes were done to protect APL from scrutiny from the Department of Transportation ("DOT"). Even if the court could consider these

affidavits—arguments raised for the first time in reply are generally waived—the court again cannot state that an intent to avoid DOT regulations objectively implies a willful intent, or reckless disregard, of the FLSA; DOT does not enforce the FLSA. The issue of willfulness, then, will be left to a determination at trial, if the parties cannot resolve their differences.

However, and as noted by Sedrick, even if the FLSA does not extend back three years, he will still receive *some* damages for this period. Sedrick is entitled to damages for the third year under Illinois law, which provides for actual damages plus a two-percent per month penalty. 820 Ill. Comp. Stat. 105/12(a). Thus, at this point the only remaining dispute is whether a fact-finder would conclude that defendants willfully intended to violate the FLSA. If so, then Sedrick's damages can increase by the difference between liquidated damages for the third year and the two percent per month state-law penalty.

**D.     Prejudgment interest**

Prejudgment interest will not be awarded. As noted by Sedrick, it is inapplicable where liquidated damages are awarded, and thus cannot be granted for the two years definitely covered by the FLSA. The court also sees no reason to grant it for the third year; the third year will either have a built-in interest calculation (two percent if state law controls), or else will also be subject to the liquidated damages rule (if there is eventually a finding of willfulness).

## IV. CONCLUSION

A status hearing will be set in approximately thirty days. The parties are directed to confer with each other to determine if, given the court's rulings above, a stipulated agreement on the amount of damages can now be reached. If the parties are unable to do so, then Sedrick will have to select one of two options: He can proceed to trial on the issue of willfulness and submit an updated calculation of damages after the trial concludes. Or he can forego a trial on the issue of

willfulness and move instead for a judgment based on his FLSA remedies for the first two years, and state law remedies for his third year. If the second option is selected, Sedrick will be permitted a reasonable amount of time to obtain the necessary professional services to calculate the state interest amount, as requested in his motion for summary judgment.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 30, 2009